Kyle Gurwell (SBN 289298)
**LAW OFFICE OF KYLE GURWELL**
7755 Center Ave Ste 1100
Huntington Beach CA 92647
Telephone: (714) 372-2245
*kng@lawofficekg.com*

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| JOSEPH MUSHARBASH, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br> - against -<br><br>SONY ELECTRONICS INC.,<br><br>     Defendant. | No. 2:22-cv-7963<br><br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Joseph Musharbash ("Plaintiff") alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge, as follows:

1. Sony Electronics Inc. ("Defendant" or "Sony") markets, manufactures, labels, and designs cameras and lenses under the Sony brand ("Product").

**I. SONY CAMERAS AND LENSES**

2. Sony is the market leader in the sale of cameras and lenses, above rivals such as Canon and Nikon.

3. The most popular camera amongst professional and hobbyist photographers is the full-frame mirrorless interchangeable-lens camera.

4. Interchangeable lenses provide expanded image-capture capabilities to the same camera.

5. While Sony has long been a leader in digital imaging technology, it did not become the leading camera maker overnight.

6. Around 2006, it acquired camera manufacturer Minolta, and slowly integrated its

1    technology with Sony camera.

2        7.      However, Sony cameras lacked the numerous lens options available to Canon and

3    Nikon users.

4        8.      Sony quickly developed a range of more than 40 advanced lenses, under its own

5    brand and with well-known third parties such as Zeiss.

6        9.      The G Master ("GM" or "Gold Master") lenses represent Sony's top-of-the-line lens.

  

19       10.     According to Sony's website:

         [T]hey are designed and built to meet the rigorous requirements of
         professionals both in the field and in the studio. They are heavily
         weather sealed for use outdoors, they have the best available lens
         coatings to minimize flare and maximize contrast, and they are build
         using the latest materials to minimize weight despite the often
         complex optical formulae.

24       11.     The G Master lenses are made to satisfy professional requirements, through imaging,

25   speed, efficiency, and reliability.

26       12.     The G Master lenses are known for their reliability because they are more resistant

27   to dust and water.

28

13.     By incorporating advanced actuator technology, the lenses can operate faster and focus with greater precision when the camera is in manual or auto mode.

14.     Professional photographers often prefer one brand of camera to another, which means they will buy several lenses from the same company for shooting.

15.     Lenses are just one type of peripheral sold to camera users, in addition to flashes and mounts.

16.     Advanced lenses like the G Master often cost more than the cameras to which they are mounted.

17.     The prices for the G Master range from $1,500 to $2,800.

18.     The SEL1635GM F2.8 lens was released in May 2017 and is currently sold for $2,199.99 by Sony, and even more from third-parties.



19.     One of the key features of the SEL1635GM F2.8 is that is the same weight as F4 lenses sold by competitors.

20.     This weight is significant because a photographer may use the camera for long periods of time, making the difference in weight noticeable.

## II.     RECALL OF SEL1635GM

21.     Companies issue recalls of products for reasons including safety risk and defective design.

22.     Recalls are an important way that companies can address product issues they are not

3

1 aware of at the time a product is sold.

2       23.      In November 2019, Sony initiated a voluntary recall of the SEL1635GM FE 16-

3 35mm F2.8 GM E-mount lenses in the form of a Lens Check and Repair Program.

4       24.      The expressed reason was because the lens "may cause the camera to not operate

5 correctly when the lens is attached," such as preventing the camera's rear screen from displaying

6 correctly.

7       25.      Sony advised customers that only lenses with serial numbers between 1800502 and

8 1823192 were believed to be affected.

9       26.      To see if their lenses were affected, Sony directed customers to enter the lens serial

10 number on its website.

11       27.      If a lens was affected, Sony stated that, "subject to the terms and conditions in the

12 Limited Warranty that accompanied the Affected Lenses, we will repair your Affected Lens, free of

13 charge, until March 31, 2023."

14 **III.     SERIAL NUMBERS ON SONY CAMERAS AND LENSES**

15       28.      Serial numbers serve a variety of purposes.

16       29.      First, they let a manufacturer know if a particular group of items are failing more

17 often than others.

18       30.      Second, they can assist in tying problems back to manufacturing details.

19       31.      This assures consumers that in the event of an issue, they will be able to receive post-

20 sale assistance and servicing.

21       32.      Third, serial numbers help prevent theft, because it is more difficult to sell a stolen

22 product with a serial number, reducing incentives to steal such items.

23       33.      Even where an etched or engraved serial number is removed, this removal will be

24 visible in the form of scratching or otherwise, so a prospective buyer will know efforts have been

25 made to conceal its origins.

26       34.      Fourth, serial numbers allow companies to identify products which may pose dangers

27 to customers and the public.

28

35.     Each Sony camera and lens contains a unique serial number.

36.     These serial numbers are affixed via a small sticker plate, shown below by the number 1807205 attached to the lens base of the SEL1635GM lens.



37.     Plaintiff's SEL1635GM is shown below, and the space where the serial number sticker is supposed to be is empty.



38.     Since the serial number is on a sticker affixed to the lens, it is at significant risk of coming off.

39.     Cameras and lenses are handled intensively by their users.

40.     This causes dirt, moisture, and oils, from the skin and environment, to contact the outer parts of the lens, which is where the serial number sticker is located.

41.     Cameras and lenses must be able to withstand the constant oils and moisture from skin.

42.     Over time, the serial number stickers on Sony lenses have a high tendency to fall off.

43.     Should that happen, users of Sony lenses will not be able to receive product support, servicing, warranty coverage, nor participate in any recalls, because Sony requires the user to provide the lens' serial number.

44.     If a serial number on a Sony lens falls off, law enforcement will not be able to identify the lens to recover it from criminals.

45.     The absence of a serial number may prevent users from insuring their lenses.

46.     Sony's application of serial numbers is an outlier among leading lens manufacturers.

47.     For instance, competitor companies, such as Canon, Zeiss, Loxia, Pentax, Batis, Nikon, and Fuji, either engrave or etch the serial numbers onto the barrel or mount of their lenses.

48.     Where other companies may use a plate or sticker, it is situated in a sunken location, recessed from the body, which protects it from falling off.

49.     The application of the serial numbers through stickers makes Sony lenses more vulnerable to theft, because criminals know they can easily remove the serial numbers.

50.     They can do this without having to file down the serial number which would reveal efforts have been taken to conceal its provenance.

51.     Prospective buyers of stolen lenses will not know the serial number sticker had been intentionally removed, nor where a serial number was affixed on the lens.

52.     The cost of affixing a serial number by a sticker is less than etching or engraving, allowing Sony to save money on each lens.

53.     The serial numbers on Sony lenses can become detached within six months of

6

intensive usage.

54.     Sony relies solely on the serial number sticker for warranty verification and administering recalls, which prevents lens owners from receiving these services.

55.     The absence of a serial number prevents owners from returning their items within the allotted time period.

## PARTIES

56.     Plaintiff is a resident of Pomona, Los Angeles County, California.

57.     During the relevant statutes of limitations for each cause of action, between October and November 2021, Plaintiff purchased the Product for personal and household use, in reliance on the representations it was not defective, due to design or manufacture, and that if it was, Sony would be able to identify it through a permanent marking in the form of a serial number to provide servicing.

58.     Plaintiff purchased the Product over other comparable lenses because he believed it would operate without defects of design and manufacture, and that if it suffered from such defects, Sony would be able to identify the Product and perform necessary servicing.

59.     Plaintiff sought to purchase a lens without design defects that would prevent the camera to which it was attached from operating correctly, including preventing the rear screen of the camera from displaying correctly.

60.     After Plaintiff purchased and attempted to use the Product, he experienced display issues with the rear screen of his camera due to the lens.

61.     Plaintiff contacted Sony customer support, who confirmed that what he experienced was consistent with the reasons which prompted the recall.

62.     The representative asked Plaintiff to provide the serial number, and he responded that it was not affixed or otherwise indicated on the lens.

63.     Defendant's representative did not question or have reason to doubt that Plaintiff's lens was anything but an authentic, legitimate Sony lens, but informed him that company policy was that only lenses containing verified serial numbers would be accepted under the recall.

64.     Plaintiff did not expect the serial number to not be permanently affixed to the Product

7

1  in a way that would prevent him from receiving necessary post-sale servicing, due to defects of

2  design or manufacture.

3      65.    Plaintiff paid more for the Product than he otherwise would have, and would only

4  have been willing to pay less, or unwilling to purchase it at all, absent the misleading representations.

5      66.    Defendant Sony Electronics, Inc. is a Delaware corporation with a principal place of

6  business in San Diego, California, San Diego County.

7      67.    Defendant is the U.S. subsidiary of Sony Group Corporation, a Japanese

8  multinational conglomerate corporation headquartered in Kōnan, Minato, Tokyo, Japan.

9      68.    Sony is the market leader in cameras and has a predominant market share in the

10  image sensor market.

11      69.    As a result of the false and misleading representations, the Products are sold at a

12  premiumprice, approximately no less than $1800, compared to other similar products represented

13  in a non-misleading way, and higher than if they were represented in a non-misleading way.

14      70.    Defendant misrepresented the Product's value because the high probability the serial

15  number sticker would become detached meant Plaintiff and consumers were deprived of the value

16  of their purchase, through, among other things, the inability to obtain post-sale servicing in the event

17  of a recall due to defects of design or manufacture.

18      71.    Defendant's false, misleading, and deceptive misrepresentations and omissions are

19  likely to continue to deceive and mislead reasonable consumers and the general public, as they have

20  already misled Plaintiff.

21                        **JURISDICTION AND VENUE**

22      72.    This Court has subject matter jurisdiction over this putative class action pursuant to

23  the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2).

24      73.    Plaintiff is a citizen of Pomona, Los Angeles County, California.

25      74.    Defendant is a Delaware corporation with its principal place of business in San

26  Diego, California, San Diego County.

27      75.    Diversity exists because Defendant and the class of persons Plaintiff seeks to

28  represent are citizens of different states.

CLASS ACTION COMPLAINT
*Musharbash v. Sony Electronics Inc.*, No. 2:22-cv-7963

76.     Sales of the Product along with statutory, punitive and other monetary damages exceed $5 million during the applicable statutes of limitations, exclusive of interest and costs.

77.     Venue is in this District because a substantial part of the events or omissions giving rise to the claim occurred here, including Plaintiff's purchase and experiences.

78.     This Court has personal jurisdiction over Defendant because it transacts business within California and sells its products to consumers from thousands of stores within California.

**Intradistrict Assignment**

79.     Pursuant to General Order No. 21-01, In the Matter of Assignment of Cases and Duties to District Judges, and Rule I.B.1.a.(1)(c) ("Non-Removed Cases Not Involving the United States"), this Action should be assigned to the Western Division.

80.     This assignment is because 50% or more of the plaintiffs who reside in this District do not reside in the Southern or Eastern Division.

**CLASS ACTION ALLEGATIONS**

81.     Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following class:

> **National Class:** All persons in the United States who purchased the Product during the statutes of limitations for each cause of action alleged (the "Class").

82.     Excluded from the Class are: (a) Defendant, Defendant's board members, executive-level officers, and attorneys, and immediate family members of any of the foregoing persons; (b) governmental entities; (c) the Court, the Court's immediate family, and the Court staff; and (d) any person that timely and properly excludes himself or herself from the Class in accordance with Court-approved procedures.

83.     Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

84.     Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

85.     Plaintiff is an adequate representative because his interests do not conflict with other

9

1    members.

2         86.    No individual inquiry is necessary since the focus is only on Defendant's practices

3    and the class is definable and ascertainable.

4         87.    Individual actions would risk inconsistent results, be repetitive and are impractical

5    to justify, as the claims are modest relative to the scope of the harm.

6         88.    Plaintiff's counsel is competent and experienced in complex class action litigation

7    and intends to protect class members' interests adequately and fairly.

8                          **CLAIMS FOR RELIEF**

9                             **FIRST CLAIM**
                **Violation of California's Unfair Competition Law,**
10              **Cal. Bus. & Prof. Code § 17200 *et seq.***

11        89.    Plaintiff incorporates all preceding paragraphs.

12        90.    California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*

13   ("UCL"), prohibits any "unlawful, unfair or fraudulent business act or practice."

14        91.    Defendant's conduct constitutes an "unfair" and/or "fraudulent" business practice, as

15   set forth in California Business & Professions Code §§ 17200-17208.

16        92.    Defendant's conduct is "unlawful" because it violates the California's False

17   Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.* ("FAL"), and California's Consumers

18   Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* ("CLRA").

19        93.    Defendant's conduct was and continues to be unfair and fraudulent because it made

20   materially false representations and omissions about the Product's quality, as this relates to its ability

21   to be serviced or repaired after purchase.

22        94.    Defendant made express and implied representations that the Product was

23   manufactured in accordance with industry standards, which includes affixing a serial number

24   through etching or engraving.

25        95.    Defendant is aware that the representations and omissions it has made about the

26   Product's quality and workmanship extend beyond their immediate functionality and include the

27   ability of the purchasers to receive required and necessary services and repair, which they are

28   entitled to.

96.     Defendant's motive was to derive financial gain at the expense of ensuring the Product was able to be serviced for customers, because it costs more to etch or engrave a serial number to the Product than to attach it on a sticker.

97.     This practice also saves money because it prevents purchasers, like Plaintiff, from submitting their Product through repair programs they are otherwise entitled to participate in.

98.     Had Plaintiff been aware of Defendant's practices, he would not have purchased the Product or would have paid less.

99.     In accordance with Cal. Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence corrective advertising.

**SECOND CLAIM**
**Violation of California's Unfair Competition Law,**
**Cal. Bus. & Prof. Code § 17200** *et seq.***,**
**Unfair and Fraudulent Conduct Prongs**

100.     The UCL prohibits any "unlawful, unfair or fraudulent business act or practice."

101.     The false and misleading representations and omissions constitute "unfair" business acts and practices because they are immoral, unscrupulous, and offend public policy.

102.     The gravity of the conduct at issue outweighs any conceivable benefit.

103.     The representations and omissions constitute "fraudulent" business acts and practices because they are false and misleading to Plaintiff and the Class Members.

104.     Defendant's representations and omissions deceived Plaintiff and the Class Members about the Product's ability to be serviced following purchase.

105.     In accordance with Cal. Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

**THIRD CLAIM**
**Violation of California's False Advertising Law,**
**Cal. Bus. & Prof. Code § 17500** *et seq.*

106.     The FAL prohibits "mak[ing] any false or misleading advertising claim."

107.     Defendant makes "false [and] misleading advertising claim[s]" by deceiving

consumers about the extent to which it will stand behind the Product in the event a defect of design or manufacture is discovered.

108. In reliance on this false and misleading advertising, Plaintiff purchased and used the Product without knowledge Defendant would not provide post-purchase servicing in the high likelihood the serial number became detached.

109. Defendant knew or should have known that its representations and omissions were likely to deceive consumers.

110. Plaintiff and Class Members seek injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

**FOURTH CLAIM**
**Violation of California's Consumers Legal Remedies Act,**
**Cal. Civ. Code § 1750 *et seq.***

111. The CLRA adopts a statutory scheme prohibiting deceptive practices in connection with the conduct of a business providing goods, property, or services primarily for personal, family, or household purposes.

112. Defendant's policies, acts, and practices were designed to, and did, result in the purchase and use of the Product primarily for personal, family, or household purposes, and violated and continues to violate sections of the CLRA, including:

      1. Civil Code § 1770(a)(5), because Defendant represented that the Product had characteristics, attributes, features, capabilities, uses, benefits, and qualities it does not have;

      2. Civil Code § 1770(a)(7), because Defendant represented that the Product was of a particular standard, quality, or grade, which it is not;

      3. Civil Code § 1770(a)(9), because Defendant advertised the Product with an intent not to sell the Product as advertised; and

      4. Civil Code § 1770(a)(16), because Defendant represented the Product had been supplied in accordance with its previous representations,

12

1        when it was not.

2        113.    Pursuant to the provisions of Cal. Civ. Code § 1782(a), Plaintiff will send a CLRA

3    Notice to Defendant concurrently with the filing of this action or shortly thereafter, which details

4    and includes these violations of the CLRA, demand correction of these violations, and provide the

5    opportunity to correct these business practices.

6        114.    If Defendant does not correct these business practices, Plaintiff will amend or seek

7    leave to amend the Complaint to add claims for monetary relief, including restitution and actual

8    damages under the CLRA.

9        115.    If Defendant does not correct these business practices, Plaintiff will request

10   injunctive relief and ask that this Court enjoin Defendant from continuing to employ the unlawful

11   methods, acts and practices alleged herein pursuant to Cal. Civ. Code § 1780.

12                              **FIFTH CLAIM**
13                      **Breaches of Express Warranty,**
       **Implied Warranty of Merchantability/Fitness for a Particular Purpose**
14         **and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.**

15       116.    The Product was manufactured, identified, marketed, and sold by Defendant and

16   expressly and impliedly warranted to Plaintiff that it was not designed and manufactured

17   defectively, and that if it was, post-sale servicing or a recall would correct these issues.

18       117.    Defendant directly marketed the Product to Plaintiff through its advertisements and

19   marketing, through various forms of media, on the packaging, in print circulars, direct mail, product

20   descriptions distributed to resellers, and targeted digital advertising.

21       118.    Defendant knew the product attributes that potential customers like Plaintiff were

22   seeking and developed its marketing and labeling to directly meet those needs and desires.

23       119.    Defendant's representations about the Product were conveyed in writing and

24   promised it would be defect-free, and Plaintiff understood this meant that it would be subject to

25   post-sale servicing and manufacturer recalls in the event of discovery of defects.

26       120.    Defendant's representations affirmed and promised that the Product would be subject

27   to post-sale servicing and manufacturer recalls in the event of discovery of defects.

28       121.    Defendant described the Product so Plaintiff believed it would be subject to post-sale

                                    13

1   servicing and manufacturer recalls in the event of discovery of defects, which became part of the

2   basis of the bargain that it would conform to its affirmations and promises.

3       122.    Defendant had a duty to disclose and/or provide non-deceptive descriptions and

4   marketing of the Product.

5       123.    This duty is based on Defendant's outsized role in the market for this type of Product,

6   a trusted company, and leading seller of cameras and lenses.

7       124.    Plaintiff recently became aware of Defendant's breach of the Product's warranties.

8       125.    Plaintiff provided notice to Defendant, its agents, representatives, retailers, and their

9   employees through his contact with its customer service representatives, when he contacted them

10  about participating in the recall.

11      126.    Defendant received notice and should have been aware of these issues due to

12  complaints by third-parties, including regulators, competitors, and consumers, to its main offices,

13  and by consumers through online forums.

14      127.    The Product did not conform to its affirmations of fact and promises due to

15  Defendant's actions.

16      128.    The Product was not merchantable because it was not fit to pass in the trade as

17  advertised, not fit for the ordinary purpose for which it was intended and did not conform to the

18  promises or affirmations of fact made on the packaging, container or label, because it was marketed

19  as if it would be subject to post-sale servicing and manufacturer recalls in the event of discovery of

20  defects.

21      129.    The Product was not merchantable because Defendant had reason to know the

22  particular purpose for which the Product was bought by Plaintiff, because he expected it would be

23  subject to post-sale servicing and manufacturer recalls in the event of discovery of defects, and he

24  relied on Defendant's skill and judgment to select or furnish such a suitable product.

25      130.    Plaintiff would not have purchased the Product or paid as much if the true facts had

26  been known, suffering damages.

27      131.    Defendant promised and expressly warranted that the Product could be serviced,

28  repaired, insured, and located in the event it would require post-sale servicing, be subject

14

manufacturer recalls in the event of discovery of defects, and became missing or was stolen.

132.     As a direct and proximate result of Defendant's breach, Plaintiff and Class Members suffered economic damages, including costly repairs, loss of use, replacement costs, loss in value and resale value of the Product.

**SIXTH CLAIM**
**Violation of the Magnusson-Moss Warranty Act,**
**15 U.S.C. §§ 2301 *et seq.* ("MMWA")**

133.     The Product is a "consumer product" within the meaning of the MMWA, 15 U.S.C. § 2301(1).

134.     Defendant's express warranties are written warranties within the meaning of 15 U.S.C. § 2301(6).

135.     The Product's implied warranties are accounted for under 15 U.S.C. § 2301(7).

136.     Defendant breached its warranties with Plaintiff and Class Members.

137.     The Products owned by Plaintiff and Class Members share common defects in that they are unable to be serviced, repaired, insured or located in the event their serial numbers become detached.

138.     Prior to the filing of this Complaint, Plaintiff notified Defendant of these defects through calling its representatives, and was informed his Product could not be serviced or repaired due to the missing serial number.

139.     The amount in controversy for the Plaintiff's and Class Members' individual claims exceeds $25.

140.     The total amount in controversy of this action in sum exceeds $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

141.

**SEVENTH CLAIM**
**Breach of Implied Warranty of Merchantability**
**and Fitness for a Particular Purpose**

142.     Defendant markets its products as superior in quality and dependability to its competitors, and touts its post-purchase servicing and repair of the Products as a reason to buy Sony

15

cameras and lenses above other brands.

143.    Plaintiff and Class Members purchased their Products because they expected the items would be usable as cameras and lenses, and such usability encompasses the post-purchase repair and servicing of the Products.

144.    Defendant had reason to know that Plaintiff and Class Members relied on its promises of reliability and dependability when selecting their Products, and they relied on Defendant's skill or judgment to furnish devices that accomplished that purpose and others.

145.    Defendant breached the implied warranties of merchantability and fitness for the particular purpose, by not servicing or repairing items where the serial number had become detached, even though it confirmed that customers like Plaintiff were the lawful owners of their Products.

146.    Plaintiff was harmed by Defendant's breach of the implied warranty of fitness by, inter alia, overpaying for the Product.

147.    Plaintiff was an intended third party beneficiaries of contracts (including implied warranties) between Defendant and the distributors and retailers who sell the Product.

148.    As a direct and proximate result of the breach of said warranties, Plaintiff and Class Members were injured and are entitled to damages.

**EIGHTH CLAIM**
**Unjust Enrichment**

149.    Plaintiff incorporates all preceding paragraphs.

150.    Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and Class Members, who seek restitution and disgorgement of inequitably obtained profits.

151.    Therefore, Plaintiff prays for relief as set forth below.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and members of the proposed Class, pray for judgment and relief on all of the legal claims as follows:

A.      Certification of the Class, certifying Plaintiff as representative of the Class, and

16

1    designating Plaintiff's counsel as counsel for the Class;

2    B.    A declaration that Defendant is financially responsible for notifying the Class

3    Members of the pendency of this suit;

4    C.    A declaration that Defendant has committed the violations alleged herein;

5    D.    For any and all injunctive relief the Court deems appropriate;

6    E.    For restitution and disgorgement pursuant to, without limitation, the California

7    Business & Professions Code §§ 17200, *et seq.* and Cal Civ. Code § 1780, except for

8    monetary damages under the CLRA;

9    F.    An award of compensatory damages, the amount of which is to be determined at trial,

10    except for monetary damages under the CLRA;

11    G.    For punitive damages;

12    H.    For attorneys' fees;

13    I.    For costs of suit incurred;

14    J.    For pre- and post-judgment interest at the legal rate on the foregoing sums; and

15    K.    For such further relief as this Court may deem just and proper.

16    **<u>DEMAND FOR JURY TRIAL</u>**

17    Plaintiff demands a jury trial on all causes of action so triable.

18

19    Date: November 1, 2022                    Respectfully submitted,

20    By:  */s/* Kyle Gurwell_____

21    Kyle Gurwell (SBN 289298)
      **LAW OFFICE OF KYLE GURWELL**
22    7755 Center Ave Ste 1100
      Huntington Beach CA 92647
23    Tel: (714) 372-2245
      *kng@lawofficekg.com*
24
      Spencer Sheehan (*Pro Hac Vice* Forthcoming)
25    **SHEEHAN & ASSOCIATES, P.C.**
      60 Cuttermill Rd Ste 412
26    Great Neck NY 11021
      Tel: (516) 268-7080
27    *spencer@spencersheehan.com*

28    *Counsel for Plaintiff and the Proposed Class*
      17